**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

IBRAHIMA SORY BAH,

                    Petitioner,

    v.

DEPARTMENT OF HOMELAND
SECURITY, et al.,

                    Respondents.

CIVIL ACTION NO. 3:26-CV-01622

(MEHALCHICK, J.)

**MEMORANDUM**

Petitioner, Ibrahima Sory Bah ("Bah") brings this petition for writ of habeas corpus. (Doc. 1). On June 12, 2026, Bah filed the instant petition, requesting that Respondents Department of Homeland Security, Immigration and Customs Enforcement, and Craig Lowe[1] release him from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania or provide him with an immediate bond hearing. (Doc. 1, at 8). For the

---

[1] Pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig Lowe ("Lowe"), Warden of the Pike County Correctional Facility. "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Bah is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 2); *see Rumsfeld*, 542 U.S. at 434. As such, Respondents Department of Homeland Security and Immigration and Customs Enforcement are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Bah on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025), *adopted in part, rejected in part*, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (finding same).

following reasons, Bah's petition (Doc. 1) is **GRANTED**, and Lowe is **ORDERED** to release Bah from custody.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The following background is derived from Bah's petition, Lowe's response, and the exhibits thereto. (Doc. 1; Doc. 8). Bah is a citizen of Guinea, who first entered the United States on or about November 15, 2023, at or near Lukeville, Arizona. (Doc. 1, at 13; Doc. 8, at 4-5). Bah was subsequently encountered by border patrol officers, who arrested and transported Bah to a Border Patrol Station for processing and advisement of his rights. (Doc. 8, at 5). On November 17, 2023, ICE served Bah with a notice to appear, charging him as removable because he is an "alien present in the United States without being admitted or paroled, or who arrived in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (Doc. 8, at 5). On November 3, 2025, ICE encountered and arrested Bah during a scheduled check-in appointment. (Doc. 8, at 5). ICE transported Bah to the Moshannon Valley Processing Center and later transferred Bah to the Pike County Correctional Facility. (Doc. 1, at 14; Doc. 8, at 6).

On December 22, 2025, an immigration judge issued Bah an order of removal. (Doc. 1, at 13; Doc. 8, at 6). On January 21, 2026, Bah appealed his order of removal to the Board of Immigration Appeals ("BIA"), and his appeal is pending. (Doc. 1, at 13; Doc. 8, at 6; Doc. 8-6). On June 12, 2026, Bah filed the instant habeas petition, seeking release from custody or an immediate bond hearing. (Doc. 1). On June 24, 2026, Lowe filed a response to Bah's petition. (Doc. 8). Bah did not file a timely traverse. Accordingly, Bah's petition for writ of habeas corpus is ripe and ready for disposition.

## II.   LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

III.   **JURISDICTION**

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Baptiste*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear

4

bond requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction over Bah's habeas petition because the legal questions of whether § 1225(b) or § 1226(a) applies to Bah and whether Bah is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

## IV.   DISCUSSION

Bah contends that he has been detained past the presumptively reasonable six-month period of detention under 8 U.S.C. § 1231 and that the government is unlikely to remove him in the near future. (Doc. 1, at 7). Lowe counters that Bah does not have a final order of removal and that Bah is not eligible for a bond hearing because he is properly detained under 8 U.S.C. § 1225(b)(2)(A). (Doc. 8, at 16-17). Bah cannot be detained under 8 U.S.C. § 1231 because with his appeal to the BIA, his removal proceedings are ongoing. 8 U.S.C. § 1231 ("The removal period begins on . . . (i) [t]he date the order of removal becomes administratively final"). Accordingly, the Court will first address whether Lowe properly detained Bah under § 1225(b)(2)(A). The Court will then address whether Bah's detention violates the Due Process Clause of the Fifth Amendment.

A. Lowe Improperly Detained Bah Under 8 U.S.C. 1225(b)(2)(A).

Lowe improperly detained Bah under 8 U.S.C. § 1225(b)(2)(A), when Lowe should have detained Bah under 8 U.S.C. § 1226(a). Bah provides that he has been in prolonged mandatory detention, despite having lived in the United States for three years with no criminal record. (Doc. 1, at 7). Lowe contends that Bah is properly detained under § 1225(b)(2)(A) because Bah is present in the United States without lawful admission. (Doc. 8, at 17). Lowe avers that under § 1225(b)(2)(A), Bah's detention is mandatory. (Doc. 8, at 18).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at \*1. Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at \*1. To trigger 8 U.S.C. § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov*, 2025 WL 3188399, at \*6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at \*6; *Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid v. Bondi*, No 3:25-cv-00304, 2025 WL 2985150, at *16 n. 7 (W.D. Pa. Oct. 23, 2025); *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 807 F. Supp. 3d at 407. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[2] *Kashranov*, 2025 WL 3188399, at *6.

---

[2] The Court acknowledges that the Fifth Circuit and Eighth Circuit issued decisions in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 503 (5th Cir. 2026) and *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) respectively, both holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* and *Avila* are not binding on the Court.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice announced a new practice, in which all applicants for admission, regardless of when the noncitizens were apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited July 9, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United

States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes,* 2025 WL 3171639, at \*2 (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at \*1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but was "already here"); *Del Cid v. Bondi,* 2025 WL 2985150 at \*14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto,* 807 F. Supp. 3d at 408 (collecting cases).

Section 1226(a), not § 1225(b)(2)(A), applies to Bah's detention because Bah is not seeking admission into the United States. Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez,* 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at \*6; *see also* 807 F. Supp. 3d 397, at 400, 408 (collecting cases). Bah is not actively attempting to come into the United States. Bah has lived in the United States since November 2023. (Doc. 1, at 13; Doc. 8, at 4-5). Based on the plain meaning of the phrase "seeking admission," Bah sought admission when he entered the United States on or about November 15, 2023. (Doc. 1, at 13; Doc. 8, at 4-5); *see Kashranov,* 2025 WL 3188399, at \*6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). Instead, § 1226(a) applies to applicants for admission, like Bah, who are not actively seeking admission but who have been residing in the United States for an extended period. *See Kashranov,* 2025 WL 3188399, at \*1 (finding "mandatory detention only applies for aliens who are 'seeking admission,' and

petitioner who lived in the United States for almost two years was not seeking admission but 'already here'"); *see also Soto*, 807 F. Supp. 3d at 400, 408 (collecting cases). Accordingly, after his November 3, 2025 arrest, Lowe improperly detained Bah under § 1225(b), when he should have detained Bah under § 1226(a).

B. LOWE VIOLATED BAH'S DUE PROCESS RIGHTS BY IMPROPERLY SUBJECTING BAH TO MANDATORY DETENTION.

Lowe's continued mandatory detention of Bah under § 1225(b)(2)(A) violates Bah's procedural due process rights. Bah avers that his prolonged mandatory detention violates the due process protections guaranteed by the Fifth Amendment. (Doc. 1, at 7). Lowe counters that Bah's temporary detention pending his removal proceedings does not violate due process because Bah has ample available process in his current removal proceedings. (Doc. 8, at 44). Lowe also avers that Bah is only entitled to the due process afforded to noncitizens under the INA, even if he has lived in the United States for years. (Doc. 8, at 17).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

10

The first factor, private interest implicated by the government action, weighs heavily in Bah's favor because Lowe has deprived Bah of his physical liberty with improper detention without the possibility of bond under § 1225(b)(2)(A). (Doc. 8, at 16); *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects); *Soto*, 807 F. Supp. 3d at 409. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Bah's favor because Bah remains erroneously detained without the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto*, 807 F. Supp. 3d at 409 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Bah's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 807 F. Supp. 3d at 409-10. Here, Bah poses no such risk to the government's interest in detaining him. Lowe does not allege that Bah poses a flight risk or danger to the community. (*See* Doc. 8). Further, Bah has no criminal history and Bah has demonstrated compliance with the immigration process by attending mandatory ICE check-in appointments. (Doc. 8, at 5). As

each *Mathews* factor weighs in Bah's favor, Lowe's mandatory detention of Bah under § 1225(b)(2)(A) violates Bah's procedural due process rights. Accordingly, Bah's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Bah from custody.

V.    CONCLUSION

For the foregoing reasons, Bah's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Lowe is **ORDERED** to release Bah from custody. Lowe is also permanently enjoined from re-detaining Bah under § 1225(b) absent a compelling change in circumstances. Bah may move to reopen this matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing or if Lowe imposes restrictions on Bah's release, such as any form of body-worn electronic monitoring. The Clerk of Court is directed to close this matter.

An appropriate Order follows.

BY THE COURT:

Dated: July 24, 2026                    */s/ Karoline Mehalchick*
                                        **KAROLINE MEHALCHICK**
                                        **United States District Judge**

12